UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY MAHL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-5243** |
| **NOKIA, INC.** | **SECTION "K"(2)** |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss (Doc. No. 8) filed by Nokia, Inc. ("Nokia") filed in this employment discrimination suit. The motion was converted into a motion for summary judgment by virtue of affidavits been filed as recognized by the parties in their respective filings. Nokia contends that the Louisiana Employment Discrimination Law, La. Rev. Stat. 23:301, *et seq*. is inapplicable to it and that the plaintiff has failed to allege sufficient facts to bring a suit for intentional infliction of emotional harm. Having reviewed the pleadings, memoranda, exhibits, affidavits and the relevant law, the Court finds that summary judgment should be granted.

**Background**

Plaintiff Mary Mahl ("Mahl") was employed as a sales manager for Nokia, Inc. ("Nokia") in June of 1997. Her husband was diagnosed with terminal cancer in April of 2002 (Complaint, ¶ 5). On January 12, 2004, she was notified that her job position had been transferred to Miami, Florida. (Memorandum in Support, p. 3 n. 2). She was given the option to transfer to Miami, with the move required to be completed no later than June 20, 2004, severance or leave under the Family Medical Leave Act for 12 weeks if applicable which options were memorialized in a letter dated March 22, 2004. (See Opposition to Motion, Exh. 3, Letter from Kandiss Williams HR Manager). In response, Mahl agreed to provide Nokia with a decision regarding those options by March 31,

2004. On or about March 26, 2004, she notified Nokia's human resources department of her intent to take temporary disability leave based on the deterioration of her own mental health caused by the severity of her husband's illness. (Complaint, ¶ 6). On June 14, 2004, she began receiving treatment for major depression from Dr. Timothy Brown. (Plaintiff's Supplemental Exhibit 4, Declaration of R. Timothy Brown, M.D.).   Mahl's husband died on August 16, 2004.

Mahl alleges in her complaint that she was "frozen out" of the company and that because of her disability, Nokia decided to terminate or not to accommodate Mahl in contravention of La. Rev. Stat. 23:322.  (Complaint,  ¶¶ 8 & 9).  A letter of termination was sent on September 1, 2005 and received by Mahl on September 13, 2005, in the midst of the fall-out from Hurricane Katrina The letter explained that her termination would be effective as of September 30, 2005.  The instant suit was filed on October 31, 2005, in which plaintiff alleges disability discrimination in employment under La. Rev. Stat. 23:322 and intentional infliction of emotional harm.

**Motion to Dismiss/Motion for Summary Judgment**

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"   *Id. citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  Further, "the plaintiff's complaint is to be

> construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc*., 94 F.3d 189, 194 (5th Cir. 1996).  This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim.  <u>Hitt</u>, 561 F.2d at 608.  In other words, a motion to dismiss an action for failure to state a claim"admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).  Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory.  *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

*Id*. at 161-62.  To the degree that the Court need not rely on affidavit testimony presented this would be the appropriate standard.  However, both Nokia and Mahl have presented affidavits and exhibits which convert this motion, as allowed under Fed. R. Civ. P. 12(b), into a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.  "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment.  Fed. R. Civ. P. 56(e).  Rather, the non-movant must come forward with "specific facts" that establish an issue for trial.  *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact.  *Anderson*, 477 U.S. at 255.  To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed."  *Leonard v. Dixie Well Service & Supply, Inc*., 828 F.2d 291, 294 (5th Cir. 1987).

Nonetheless, "the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion."  *Alderman v. The Great Atlantic & Pacific Tea Co., In.*, 332 F. Supp.2d 932, 935 (E.D.La. 2004) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S.  242, 248 (1986).  Thus, merely colorable or not significantly probative evidence will not prevent the entry of summary judgment.  *Id.*  With these standards in mind, the Court will now turn to the issues presented by the instant motion.

**Analysis**

### Louisiana Employment Discrimination Law Claim

The  Louisiana Employment Discrimination Law ("LEDL")  defines "employer"  as "a person, association, legal or commercial entity, . . . receiving services from an employee and, in

return, giving compensation of any kind to an employee." La. Rev. Stat. 23:302(2). Furthermore, the provisions of the LEDL apply only to "an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Id.*

Nokia initially presented an affidavit of Elaine V. Brzezinski, Senior Legal Counsel for Labor and Employment Matters for Nokia in which she attested that she has reviewed the applicable employment records for Nokia, Inc. and that it did not employ twenty or more employees within Louisiana for each working day in each of twenty or more calendar weeks in the calendar year of 2005 or in the preceding calendar year. Thus, Nokia contends that the LEDL by definition is inapplicable in this instance.

Mahl responded with an affidavit in which she contended that "to her knowledge" Nokia employed "numerous" people in Louisiana from September 1, 2004 through September 1, 2005, that Nokia Telecommunications [apparently a subsidiary of Nokia] as well as "several subsidiaries and affiliates of Nokia" also operated in Louisiana. As such, she averred that she had "a definite belief" that Nokia employed well over 20 individuals–including 6 persons paid by Market Source but worked exclusively at the direction of Nokia and thus "count[s] for at least 20 employees."

In response, a second affidavit was filed by Nokia again attested to by Elaine Brzezinski which stated that having reviewed the applicable employment records, including employee payroll records of Nokia Inc., including any and all of its subsidiaries, Nokia and any and all of its subsidiaries did not employ twenty or more employees within Louisiana for each working day in each of twenty or more calendar weeks in the calendar year of 2005 or in the preceding calendar

year of 2005.  Furthermore, she attested that Market Source is not a subsidiary of Nokia but is an unaffiliated company that is a vendor of Nokia.

Such unequivocal evidence filed by Nokia  meets the standards necessary for the entry of summary judgment.  Because of its doctrinal similarity to Title VII and the related social goals of both states, Louisiana courts routinely look to Title VII to interpret the LEDL.  *Anderson*, 332 F. Supp. 2d at 936.  As such, reliance on the "payroll test" to determine the number of employees is applicable herein.  As noted in *Walters v. Metropolitan Educational Enterprises, Inc.* 519 U.S. 202, *206-207, 117 S.Ct. 660,663 - 664 (U.S.1997):

> This test is generally called the "payroll method," since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll. The payroll method was approved in dictum by the Fifth Circuit in *Dumas v. Mount Vernon,* 612 F.2d 974, 979, n. 7 (1980), and was adopted by the First Circuit in *Thurber v. Jack Reilly's, Inc.,* 717 F.2d 633, 634-635 (1983), cert. denied, 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984); see also *Vera-Lozano v. International Broadcasting,* 50 F.3d 67, 69-70 (C.A.1 1995) (reaffirming*207 *Thurber* ). The payroll method has also been adopted by the EEOC under the Age Discrimination in Employment Act of 1967, which defines "employer" in precisely the way Title VII does. See 29 U.S.C. § 630(b); Equal Employment Opportunity Commission Notice No. –915-052, Policy Guidance: Whether Part-Time Employees Are Employees (Apr.1990), reprinted in App. to Pet. for Cert. 30a-40a (hereinafter EEOC Policy Guidance). The Department of Labor has likewise adopted the payroll **664 method under the Family and Medical Leave Act of 1993, which defines "employer" as a person who "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." See 29 U.S.C. § 2611(4)(A)(I); 29 CFR §§ 825.105(b)-(d) (1996). In its administration of Title VII, the EEOC has expressed a preference for the payroll method, see EEOC Policy Guidance, but it lacks rulemaking authority over the issue, see 42 U.S.C. § 2000e-12(a); *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 257, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991).

*Id.*  Clearly, the Nokia affidavits demonstrate using this method that Nokia does not employ a sufficient number of employees during the relevant time period to be subject to the LEDL.

Mere denials and vague "beliefs" are not competent evidence.  Brzezinski is the individual

who would have the requisite knowledge of the employment numbers of Nokia and plaintiff has presented nothing substantial to rebut this testimony. *Alderman*, 322 F. Supp.2d at 935. Conjecture will not suffice. As such, it is clear that no cause of action lies against Nokia in Louisiana under the LEDL.[1]

**Intentional Infliction of Emotional Harm**

Mahl has also alleged a claim for intentional infliction of emotional harm or distress. Mahl claims that Nokia had been "in negotiations" concerning her severance package when she was terminated immediately after Hurricane Katrina. As such, a cause of action lies for intentional infliction of emotional harm.

The definitive case outlining this cause of action is *White v. Monsanto Co.,* 585 So.2d 1205 (La.1991). The Louisiana supreme court held that in order to recover for intentional infliction of emotional distress, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result form his or her conduct." *Id.* at 1209.

The supreme court then described the conduct necessary to prevail as follows:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must

---

[1] As this argument dispenses with the LEDL claim, the court will not address the lack of notice argument also raised by Nokia.

necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort: on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam." Restatement, supra, comment d, § 46; Prosser and Keaton, The law of Torts, § 12, p. 59 (5th ed.1984). *White* at 1209.

Pretermitting the second and third elements, clearly, the facts of this case do not meet the standards required as to the first element–extreme and outrageous.  Nokia obviously gave Mahl an extraordinary amount of time to make a decision as to whether she would choose to relocate or take a severance package.  Indeed, more than one year had passed since the unfortunate death of her husband.  While the fact that the severance letter was dated September 1, 2005, only two days after Hurricane Katrina hit the Gulf Coast region, clearly Mahl was not as severely impacted as she unlike hundreds of thousands of people in New Orleans actually received the notice on September 13, 2005.  Accordingly,

**IT IS ORDERED** that the Motion to Dismiss (Doc. No. 8) as converted into a Motion for Summary Judgment is **GRANTED** and judgment shall be entered in favor of Nokia, Inc. and against Mary Mahl dismissing her complaint with prejudice.

New Orleans, Louisiana, this  18th  day of April, 2006.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**